## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD C. STARKEY, derivatively on behalf of FUQI INTERNATIONAL, INC., | : |
| Plaintiff, | : |
| v. | : |
| YU KWAI CHONG, CHING WAN WONG, LIE XI ZHUANG, LILY LEE CHEN, EILEEN B. BRODY, VICTOR A. HOLLANDER, and JEFF HAIYONG LIU, | : |
| Defendants, | : |
| and | : |
| FUQI INTERNATIONAL, INC., | : |
| Nominal Defendant. | : |

Civil Action No.

10 CIV 3326



**JURY TRIAL DEMANDED**

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1.      Plaintiff Richard C. Starkey ("Plaintiff"), by and through his undersigned attorneys, hereby submits this Verified Shareholder Derivative Complaint (the "Complaint") for the benefit of nominal defendant Fuqi International, Inc. ("Fuqi" or the "Company") against certain current and/or former members of its Board of Directors (the "Board") and executive officers seeking to remedy defendants' breaches of fiduciary duties and unjust enrichment.

### NATURE OF THE ACTION

2.      According to its public filings, Fuqi is a designer of precious metal jewelry, and develops, promotes and sells a range of products in the luxury goods market. The Company's products consist of a range of styles and designs made from gold and other precious metals. The Company operates in two divisions: (i) wholesale of jewelry products and (ii) retail jewelry

products.   The wholesale division is responsible for designing, manufacturing, selling and marketing its products to other wholesalers and distributors.   The retail division focuses on customers with an emphasis on expanding the Company's product range to meet differing customer requirements in various regions.

3.       On March 16, 2010, defendants disclosed that they had identified "certain accounting errors that are expected to have a material impact on the previously issued quarterly financial statements for the first three quarters of 2009."   Defendants also revealed that "as a result of the accounting errors, the cost of sales for each of the periods were understated and gross profit and net income, as a result, were accordingly overstated."   Additionally, Defendants estimated that the Company's "previously issued financial statements for the nine months ended September 30, 2009 were overstated by approximately $0.15 – $0.19 per share."   However, defendants did not disclose (and still have not disclosed) the specific nature of the so-called "accounting errors" or the identities of the individuals who were responsible for them.

4.       On this news, shares of the Company's stock fell $7.10 per share, or over *37%*, to close on March 17, 2010 at $11.90 per share.

5.       Accordingly, defendants failed to disclose material, adverse facts about the Company's financial well-being and business prospects. Specifically, defendants failed to disclose or indicate that: (1) the Company's reported cost of sales was materially understated; (2) the Company's reported gross profit and net income were materially overstated; (3) the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (4) the Company lacked adequate internal and financial controls; and (5) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

6.     The price of the Company's stock still has not recovered and currently trades at around $11.50 per share.

7.     As a result of defendants' breaches of fiduciary duty and other misconduct, the Company has been damaged.

## JURISDICTION AND VENUE

8.     Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading statements, occurred in substantial part in this Judicial District.  In addition, Fuqi's stock is listed and traded on the NASDAQ stock market, whose corporate headquarters are located in this Judicial District.  Further, Fuqi files periodic reports with and is subject to the jurisdiction of the U.S. Securities and Exchange Commission (the "SEC"), and thus, the U.S. federal securities laws.  Many thousands of Fuqi shareholders who collectively own millions of shares of Fuqi stock reside in the U.S.

9.     Fuqi and certain of the individual defendants are also defendants in multiple stockholder class actions for alleged violation of the U.S. securities laws in this Judicial District in connection with the actions of its executives and directors.  Prosecuting this case in this Judicial District will provide the opportunity for coordinated discovery with the other related cases pending in this Judicial District, thus affording all parties the opportunity to achieve economies and efficiencies in the conduct of these respective litigations.

10.     A majority of Fuqi's outstanding shares are owned by U.S. investors, many of which reside in this District.  More shares of Fuqi stock trade on the NASDAQ than any other stock exchange.  Fuqi files periodic reports with the SEC, which are authorized and signed by the directors of Fuqi.

11.     Each Defendant has minimum contacts with the U.S., as they either reside here or

have traveled here on Fuqi business and otherwise or authorized acts and actions which have had a sufficient impact in the U.S. or on Fuqi's shareholders and investors residing here as to justify the exercise of jurisdiction over them.

12.     The amount in controversy vastly exceeds $75,000.  Plaintiff is a citizen of the United States and resident of Colorado, which is different from all defendants, some of whom are foreign citizens.  Complete diversity of citizenship is present.  Jurisdiction exists under 28 U.S.C. §1332.

## THE PARTIES

13.     Plaintiff is a current shareholder of Fuqi and has continuously held Fuqi stock at all relevant times.  Plaintiff is a citizen of Colorado.

14.     Nominal defendant Fuqi is a Delaware corporation with its principal executive offices located at 5/F, Block 1, Shi Hua Industrial Zone, Cui Zhu Road North, Shenzhen, People's Republic of China.  According to its public filings, Fuqi, through its subsidiaries, engages in designing, developing, promoting, and selling precious metal jewelry in the People's Republic of China.

15.     Defendant Yu Kwai Chong ("Chong") is the principal founder of the Company and has served as Fuqi's President, Chief Executive Officer ("CEO"), and Chairman of the Board since April 2001.  Upon information and belief, defendant Chong is a citizen of the People's Republic of China.

16.     Defendant Ching Wan Wong ("Wong") has served as the Company's Chief Financial Officer ("CFO") since January 2004.  In addition, defendant Wong has served as a director of the Company since at least 2008.  Upon information and belief, defendant Wong is a citizen of the People's Republic of China.

17.    Defendant Lie Xi Zhuang ("Zhuang") has served as the Company's Chief Operating Officer ("COO") since April 2001.  In addition, defendant Zhuang has served as a director of the Company since at least 2008.  Upon information and belief, defendant Zhuang is a citizen of the People's Republic of China.

18.    Defendant Lily Lee Chen ("Chen") has served as a director of the Company since June 2007.  Upon information and belief, defendant Chen is a citizen of California.

19.    Defendant Eileen B. Brody ("Brody") has served as a director of the Company since June 2007.  In addition, defendant Brody is currently a member of the Board's Audit Committee (the "Audit Committee") and served as a member of the Audit Committee at all relevant times.  Upon information and belief, defendant Brody is a citizen of Massachusetts.

20.    Defendant Victor A. Hollander ("Hollander") has served as a director of the Company since June 2007.  In addition, defendant Hollander is currently a member of the Audit Committee and served as a member of the Audit Committee at all relevant times.   Upon information and belief, defendant Hollander is a citizen of California.

21.    Defendant Jeff Haiyong Liu ("Liu") has served as a director of the Company since June 2007.  In addition, defendant Liu is currently a member of the Audit Committee and served as a member of the Audit Committee at all relevant times.  Upon information and belief, defendant Liu is a citizen of the People's Republic of China.

22.    Collectively, defendants Chong, Wong, Zhuang, Chen, Brody, Hollander, and Liu shall be referred to herein as "Defendants."

23.    Collectively, defendants Brody, Hollander, and Liu shall be referred to as the "Audit Committee Defendants."

### DEFENDANTS' DUTIES

24.     By reason of their positions as officers, directors, and/or fiduciaries of Fuqi and because of their ability to control the business and corporate affairs of Fuqi, Defendants owed Fuqi and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Fuqi in a fair, just, honest, and equitable manner.  Defendants were and are required to act in furtherance of the best interests of Fuqi and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to Fuqi and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

25.     Defendants, because of their positions of control and authority as directors and/or officers of Fuqi, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.  Because of their advisory, executive, managerial, and directorial positions with Fuqi, each of the Defendants had knowledge of material non-public information regarding the Company.

26.     To discharge their duties, the officers and directors of Fuqi were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of Fuqi were required to, among other things:

      a.   Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

      b.   Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

     c.   When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

27.    At all relevant times, Fuqi had in place (and still has in place) a Code of Business Conduct and Ethics (the "Code of Conduct") which was adopted by the Board purportedly "to promote honest and ethical conduct, proper disclosure of financial information in the Company's periodic reports, and compliance with applicable laws, rules, and regulations [by]…all of the directors, officers, and employees of the Company." The Code of Conduct specifically provides, among other things, that:

    a.   "To the extent this Code requires a higher standard than required by commercial practice or applicable laws, rules, or regulations, we adhere to these higher standards";

    b.   "Inaccurate, incomplete or untimely reporting will not be tolerated and can severely damage the Company and result in legal liability";

    c.   All financial disclosures must be "full, fair, accurate, timely, and understandable";

    d.   "U.S. federal securities laws require the Company to maintain proper internal books and records and to devise and maintain an adequate system of internal accounting controls";

    e.   The Company's principal financial officers and accounting personnel "must understand and strictly comply with generally accepted accounting principles in the U.S. and all standards, laws, and regulations for accounting and financial reporting";

    f.   "Each employee has an obligation to comply with all laws, rules, and regulations applicable to the Company. These include, but are not limited to, laws covering…false or misleading financial information or misuse of corporate assets."

    g.   "All employees have a duty to report any known or suspected violation of this Code, including any violation of the laws, rules, regulations, or policies that apply to the Company."

28.    Pursuant to the Company's Audit Committee's Charter, the "primary purpose" of

the Audit Committee is to assist the Board "to fulfill its oversight of the integrity of the Company's financial statements, the Company's compliance with legal and regulatory requirements…and the performance of the Company's internal audit function." Per the terms of the Audit Committee Charter, the members of the Audit Committee were and are specifically required, among other things, to:

      a.  Review and discuss with management and the outside auditors on a quarterly basis prior to filing quarterly or annual financial statements, *inter alia*: (i) the audited financial statements to be included in the Company's Annual Report on Form 10-K (or the Annual Report to Stockholders if distributed prior to the filing of the Form 10-K); (ii) the quarterly financial statements to be included in Form 10-Q; and (iii) the Company's disclosure controls and procedures (including any significant internal control deficiencies or material weaknesses and any changes implemented in light of material control deficiencies or weaknesses);

      b.  Discuss with management the Company's policies with respect to risk assessment and risk management;

      c.  Review with management the types of information to be disclosed and the types of presentations to be made in quarterly earnings press releases and with respect to financial information and earnings guidance provided to analysts and rating agencies or otherwise made public; and

      d.  Review legal matters that may have a material impact on the Company's financial statements, the Company's compliance policies and procedures and any material reports received from or communications with regulators or government agencies.

## SUBSTANTIVE ALLEGATIONS

### The Company and Its Business

29.    According to its public filings, Fuqi is a designer of precious metal jewelry in China, and develops, promotes and sells a range of products in the Chinese luxury goods market. The Company's products consist of a range of styles and designs made from gold and other precious metals.

30.    The Company operates in two divisions: (i) wholesale of jewelry products and (ii)

retail jewelry products.  The wholesale division is responsible for designing, manufacturing, selling and marketing its products to other wholesalers and distributors.  The retail division focuses on customers with an emphasis on expanding the Company's product range to meet differing customer requirements in the various regions.

### Defendants' False and Misleading Statements

31.    On May 15, 2009, Defendants caused the Company to issue a press release entitled "FUQI International, Inc. Reports First Quarter 2009 Financial Results." In this press release Defendants stated, in relevant part:

> Revenues for the first quarter of 2009 increased 41.0% to $109.4 million from $77.6 million in the first quarter of 2008. The increase was attributable to an increase of sales volume in the wholesale business as well as from increased revenues derived from the Company's retail business. Wholesale revenue contributed approximately $96.8 million to overall revenues, representing year-over-year growth of approximately 26.7% and retail revenue contributed approximately $12.5 million to overall revenue for the quarter, which is a 9.4 times increase compared to the same period in the prior year. Gross profit in the first quarter of 2009 increased 105% to $18.1 million from $8.8 million for the same period in the prior year. Gross profit margin for the first quarter of 2009 increased 510 basis points to 16.5% compared to 11.4% in the same period in the prior year. The improvement in gross margin was primarily due to an increase of product segments, benefit from gradually rising precious metal prices and a stable increase in sales of Fuqi's and Temix's retail outlets. The Company continues to prudently grow its retail business to capitalize on higher retail margins, which has occurred in the first quarter of 2009.

> Operating expenses in the first quarter increased 189% to $5.5 million compared to $1.9 million in the prior year period. The increase was primarily a result of an increase in legal and professional fees and salary expenses incurred in relation to the expansion of our wholesale and retail business and an increase in fees to the malls for retail business. Income from operations for the first quarter increased 83% to $12.6 million from $6.9 million in the first quarter of 2008.

> Net Income for the first quarter of 2009 increased 52% to $9.7 million, or $0.45 per diluted share, compared to $6.4 million, or $0.31 per diluted share in the same period of the prior year.

> *        *        *

> 2009 Financial Outlook

> Mr. Chong continued, "Our keen financial management has allowed us to post this impressive growth, and enabled us to begin to distinguish ourselves from the competition. We plan to continue to conservatively manage our balance sheet so

that we are always ready to capitalize upon profitable opportunities in the marketplace."

For the second quarter, the Company anticipates total revenue between approximately $89.5 - $93.5 million which includes wholesale and retail revenues. Net income in the second quarter is expected to be in the range of $5.9 - $6.9 million, or $0.27 - $0.32 per diluted share, based on a weighted average share count of 21.5 million shares.

For the full year 2009, the Company currently expects full-year revenue of approximately $442.0 - $465.0 million. These estimates include both wholesale and retail revenues and exclude the impact from any potential acquisitions. The Company also anticipates net income of approximately $32.0 - $35.0 million, or diluted EPS of $1.49 - $1.63, based on a weighted average share count of 21.7 million shares.

32.     Also on May 15, 2009, Defendants caused Fuqi to file a Quarterly Report with the

SEC on Form 10-Q.  The Company's Form 10-Q was signed by defendants Chong and Wong,

and contained Fuqi's detailed financial information, including for the first quarter 2009 (ended

March 31, 2009) reporting period.  In this Form 10-Q, Defendants also stated:

The accompanying condensed consolidated balance sheet as of December 31, 2008, which has been derived from the audited consolidated financial statements and the accompanying unaudited condensed consolidated financial statements have been prepared pursuant to the rules and regulations of the Securities and Exchange Commission. Certain information and note disclosures normally included in annual financial statements prepared in accordance with accounting principles generally accepted in the United States of America have been condensed or omitted pursuant to those rules and regulations, although the company believes that the disclosures made are adequate to make the information not misleading.

In the opinion of the management, these condensed consolidated financial statements reflect all adjustments which are of a normal recurring nature and which are necessary to present fairly the financial position of Fuqi as of March 31, 2009 and the results of operations and the cash flows for the three-month periods ended March 31, 2009 and 2008.

33.     The Company's Form 10-Q also contained Sarbanes-Oxley ("SOX") required

certifications, signed by defendants Chong and Wong, which stated:

I, [Yu Kwai Chong / Ching Wan Wong], certify that:

1.     I have reviewed this report on Form 10-Q of Fuqi International, Inc.;

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements

made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.      Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.      The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

      a.      designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

      b.      designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

      c.      evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

      d.      disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.      The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

      a.      All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

      b.      Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

*          *          *

In connection with the report of Fuqi International, Inc. (the "Company") on Form 10-Q for the period ending March 31, 2009 as filed with the Securities and Exchange Commission on the date hereof (the "Report"), each of the undersigned [Yu Kwai Chong / Ching Wan Wong], in the capacities and on the dates indicated below, hereby certifies, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that to his knowledge:

(1)     The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

(2)     The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

34.     On July 22, 2009, Defendants caused the Company to issue a press release entitled "FUQI International Comments on Outlook for Second Quarter 2009 Financial Results." Therein, Defendants stated, in relevant part:

FUQI International, Inc. (Nasdaq: FUQI), a leading designer of high quality precious metal jewelry in China, today announced that based on its preliminary review of its financial results for the three months ended June 30, 2009, the Company believes that its second quarter earnings per share will be at or higher than the high end of its previously released forecast of $0.27 to $0.32 per diluted share, based on a weighted average share count of approximately 21.7 million shares. The Company plans to release its final second quarter results of operations in early August.

35.     Also on July 22, 2009, Defendants caused the Company to announce that it had filed a preliminary prospectus supplement relating to a proposed public offering of 4.5 million shares of its common stock (the "Offering").

36.     Defendants' public statements set forth above were materially false and misleading, because Defendants failed to disclose or indicate that: (1) the Company's reported cost of sales was materially understated; (2) the Company's reported gross profit and net income were materially overstated; (3) the Company's financial statements were not prepared in accordance with GAAP; (4) the Company lacked adequate internal and financial controls; and (5) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

37.     On or about July 31, 2009, under Defendants' direction, the Company completed the Offering.  In connection therewith, approximately 5.58 million shares of Fuqi common stock were issued to investors at a price of $21.50 per share, for gross proceeds of approximately $120 million.

38.     In connection with the Offering, Defendants caused the Company to file a Registration Statement, Prospectus, and Prospectus Supplement (collectively, the "Offering Materials").  In the Offering Materials, Defendants set forth Fuqi's purported detailed financial information, including for the first quarter 2009 (ended March 31, 2009) reporting period.  In the Offering Materials, Defendants also represented:

> In the opinion of management, our unaudited condensed consolidated financial statements include all adjustments, consisting only of normal and recurring adjustments, that management considers necessary for a fair presentation of the financial position and the results of operations for these periods.
>
> *        *        *
>
> The SEC allows us to "incorporate by reference" into this prospectus supplement and the accompanying prospectus the information that we file with them, which means that we can disclose important information to you by referring you in this section directly to those documents. The information incorporated by reference is considered to be part of the prospectus, and information that we file later with the SEC will automatically update and supersede this information. The following documents were filed with the SEC pursuant to the Exchange Act and are incorporated by reference and made a part of the prospectus:
>
> - our Annual Report on Form 10-K for the year ended December 31, 2008 filed with the SEC on March 31, 2009, as amended on Form 10-K/A filed with the SEC on May 12, 2009;
>
> - our Quarterly Report on Form 10-Q for the three months ended March 31, 2009 filed with the SEC on May 15, 2009;
>
> - our Current Report on Form 8-K filed with the SEC on January 23, 2009;
>
> - our Current Report on Form 8-K filed with the SEC on June 4, 2009;
> -

39.     Defendants' representations in the Offering Materials were materially false and misleading for the same reasons their other public statements set forth above were materially false and misleading.

40.     On August 6, 2009, Defendants caused the Company to issue a press release entitled "FUQI International, Inc. Reports Second Quarter 2009 Financial Results." Therein, Defendants stated, in relevant part:

> Revenues for the second quarter of 2009 increased 50.6% to $100.8 million from $66.9 million in the second quarter of 2008. The increase was attributable to an increase of sales volume in the wholesale business as well as from increased revenues derived from the Company's retail business. Wholesale revenue contributed approximately $92.5 million to overall revenues for the quarter, representing year-over-year growth of approximately 39.9%, and retail revenue contributed approximately $8.3 million to overall revenue for the quarter, which is a 10.2 times increase compared to the same period in the prior year.
>
> Gross profit in the second quarter of 2009 increased 145.1 % to $17.4 million from $7.1 million for the same period in the prior year. Gross profit margin for the second quarter of 2009 increased 660 basis points to 17.2% compared to 10.6% in the same period in the prior year. The improvement in gross margin was primarily due to an increase of product segments, an expansion in retail sales, which resulted from an increase in brand awareness, and opening additional jewelry counters as well as our acquisition of Temix's 50 retail counters/stores in 2008. Second quarter wholesale gross margin increased 510 basis points to 15.7% compared to 10.6% in the prior year period while retail gross margin increased significantly to 33.7% in the second quarter of 2009 compared to 7.4% in the second quarter of the prior year.
>
> Operating expenses in the second quarter increased 281.8% to $4.2 million compared to $1.1 million in the prior year period. The increase was primarily a result of an increase in legal and professional fees as a public company, salary expenses incurred in relation to the expansion of our wholesale and retail business and an increase in variable rents and fees to department stores and malls for retail business. Income from operations for the second quarter increased 120% to $13.2 million from $6.0 million in the second quarter of 2008.
>
> Net income for the second quarter of 2009 increased 86.8% to $9.9 million, or $0.45 per diluted share, compared to $5.3 million, or $0.25 per diluted share in the same period of the prior year.
>
> *     *     *
>
> 2009 Financial Outlook
>
> Mr. Chong continued, "As a result of the successful offering as well as market opportunities, we are raising our revenue and net income guidance for the remainder of this year. We believe that we have laid the foundation to successfully build a fully-integrated wholesale and retail operation that can capture a sizeable market share in the growing Chinese middle class market. We are enthusiastic about our future growth prospects, and believe we have the vision to build the leading jewelry provider in China."
>
> For the third quarter, the Company anticipates total revenue between approximately $121.5 - $131.3 million which includes wholesale and retail

revenues. Net income in the third quarter is expected to be in the range of $10.1 - $11.1 million, or $0.40 - $0.44 per diluted share, based on a weighted average share count of approximately 25.3 million shares. The share count will partially reflect the 5.58 million shares issued in the stock offering that closed on August 5, 2009.

For the fourth quarter, the Company anticipates total revenue between approximately $177.5 - $185.5 million which includes wholesale and retail revenues. Net income in the fourth quarter is expected to be in the range of $14.4 - $16.2 million, or $0.52 - $0.59 per diluted share, based on a weighted average share count of approximately 27.6 million shares.

For the full year 2009, the Company now expects full-year revenue of approximately $509.2 - $527.0 million. These estimates include both wholesale and retail revenues and exclude the impact from any potential acquisitions. The Company also anticipates net income of approximately $44.0 - $46.8 million, or diluted EPS of $1.83 - $1.94, based on a weighted average share count of approximately 24.1 million shares, reflecting the partial-year impact of the shares issued in our recent offering.

41.     Also on August 6, 2009, Defendants caused Fuqi to file its Quarterly Report with the SEC on Form 10-Q.  The Company's Form 10-Q was signed by defendants Chong and Wong, and contained Fuqi's purported detailed financial information.  The Company's Form 10-Q also contained SOX required certifications signed by Chong and Wong, which were substantially similar to the SOX certifications contained above.  Additionally, in the Form 10-Q, Defendants stated, in relevant part:

The accompanying condensed consolidated balance sheet as of December 31, 2008, which has been derived from the audited consolidated financial statements and the accompanying unaudited condensed consolidated financial statements have been prepared pursuant to the rules and regulations of the Securities and Exchange Commission.  Certain information and note disclosures normally included in annual financial statements prepared in accordance with accounting principles generally accepted in the United States of America have been condensed or omitted pursuant to those rules and regulations, although the company believes that the disclosures made are adequate to make the information not misleading.

In the opinion of the management, these condensed consolidated financial statements reflect all adjustments which are of a normal recurring nature and which are necessary to present fairly the financial position of Fuqi as of June 30, 2009 and the results of operations for the three and six months ended June 30, 2009 and 2008, and the cash flows for the six months ended June 30, 2009 and 2008. These condensed consolidated financial statements and related notes should be read in conjunction with the Company's annual report on Form 10-K for the fiscal year ended December 31, 2008. The results of operations for the three and six months ended June 30, 2009 are not necessarily indicative of the results which

- 15 -

may be expected for the entire fiscal year. The Company's business is seasonal in nature, with its sales and net income generally higher in the fourth calendar quarter.

42.    On November 9, 2009, Defendants caused the Company to issue a press release entitled "FUQI International, Inc. Reports Third Quarter 2009 Financial Results." Therein, Defendants stated, in relevant part:

> Revenues for the third quarter of 2009 increased 35.8% to $127.2 million from $93.7 million in the third quarter of 2008. The increase was attributable to an increase of sales volume in the wholesale business, including original design manufacturing (ODM) work, as well as from increased revenues derived from the Company's retail business. Wholesale revenue contributed approximately $117.5 million to overall revenues for the quarter, representing year-over-year growth of approximately 29.7%, and retail revenue contributed approximately $9.7 million to overall revenue for the quarter, which is a 208.7% increase compared to $3.2 million the same period of the prior year.

> Gross profit in the third quarter of 2009 increased 172.0% to $29.9 million from $11.0 million for the same period in the prior year. Gross profit margin for the third quarter of 2009 increased to 23.5% compared to 11.7% in the same period in the prior year. The improvement in gross margin was primarily due to higher wholesale margins resulting from several sizeable ODM orders fulfilled during the third quarter. Third quarter wholesale gross margin increased 12.8% to 23.6% compared to 10.8% in the prior year period while retail gross margin was 22.6% in the third quarter of 2009 compared to 38.0% in the third quarter of the prior year.

> Operating expenses in the third quarter increased 110.8% to $5.7 million compared to $2.7 million in the prior year period. The increase was primarily a result of higher professional fees as a result of the expansion of the retail business and increased payroll cost for the additional employees hired in the accounting and finance department, salary expenses incurred in relation to the expansion of the wholesale and retail business and an increase in variable rents and fees to department stores and malls for retail business. Income from operations for the third quarter increased 192.3% to $24.2 million from $8.3 million in the third quarter of 2008.

> Net income for the third quarter of 2009 increased 187.9% to $18.8 million, or $0.73 per diluted share, compared to $6.5 million, or $0.31 per diluted share in the same period of the prior year.

> *        *        *

> 2009 Financial Outlook

> Mr. Chong continued, "The third quarter came in stronger than we expected, considering the long National Holiday week and the dearth of gift-giving holidays during the quarter. Nevertheless, our ability to generate strong revenue and earnings growth during a seasonally slow period is extremely encouraging for our management team, as we look towards our goals for the future. As a result of the

stronger-than-expected third quarter performance, we will be raising our revenue and net income guidance for the fourth quarter and full year. We believe that FUQI has laid the plans for strong continued growth in the wholesale and retail markets, and our branding, marketing and distribution plans will enable us to leverage the foundation we have built for more market penetration. We are excited about the coming quarters and the plans we have in place, and look forward to providing our shareholders with optimal value."

For the fourth quarter of 2009, the Company anticipates total revenue between approximately $182.0 - $191.0 million, which includes wholesale and retail revenues. Net income in the fourth quarter is expected to be in the range of $15.2-$16.6 million, or $0.55 - $0.60 per diluted share, based on a weighted average share count of approximately 27.6 million shares.

For the full year 2009, the Company now expects full-year revenue of approximately $519.4 - $528.4 million. These estimates include both wholesale and retail revenues and exclude the impact from any potential acquisitions. The Company also anticipates net income of approximately $53.5 - $54.9 million, or diluted EPS of $ 2.21 - $2.27, based on a weighted average share count of approximately 24.2 million shares, reflecting the partial-year impact of the shares issued in our recent offering.

43.     Also on November 9, 2009, Defendants caused Fuqi to file its Quarterly Report with the SEC on Form 10-Q.  The Company's Form 10-Q was signed by defendants Chong and Wong, and contained Fuqi's detailed financial information.  The Company's Form 10-Q also contained SOX required certifications signed by Chong and Wong, substantially similar to the SOX certifications contained above.  In the Form 10-Q, Defendants further stated:

The accompanying condensed consolidated balance sheet as of December 31, 2008, which has been derived from the audited consolidated financial statements and the accompanying unaudited condensed consolidated financial statements have been prepared pursuant to the rules and regulations of the Securities and Exchange Commission ("SEC").  Certain information and note disclosures normally included in annual financial statements prepared in accordance with accounting principles generally accepted in the United States of America have been condensed or omitted pursuant to those rules and regulations, although the company believes that the disclosures made are adequate to make the information not misleading.

In the opinion of the management, these condensed consolidated financial statements reflect all adjustments which are of a normal recurring nature and which are necessary to present fairly the financial position of Fuqi as of September 30, 2009 and the results of operations for the three and nine months ended September 30, 2009 and 2008, and the cash flows for the nine months ended September 30, 2009 and 2008.

44.     These statements by Defendants were materially false and misleading for the

same reasons the statements set forth above were materially false and misleading.

**The Truth Begins to Emerge**

45.     On March 16, 2010, Defendants caused the Company to issue a press release entitled "FUQI International Provides Preliminary Fourth Quarter Financial Results; Announces Delay in Filing of Form 10-K for 2009."  Therein, Defendants revealed that they had "identified certain errors related to the accounting of the Company's inventory and cost of sales," and that these accounting "errors" were expected to have a material impact on the Company's previously issued quarterly financial statements for the first three quarters of 2009.  However, Defendants did not disclose (and still have not disclosed) what the specific nature of these "accounting errors" were or which individuals were responsible for them.

46.     Defendants further admitted in their March 16, 2010 press release that, as a result, Fuqi's financial statements for the first three quarters of 2009 should no longer be relied upon and that they intended to file amendments disclosing the effect of the accounting errors.  In relevant part, in the March 16, 2010 press release, Defendants stated:

> FUQI International, Inc. (Nasdaq GS: FUQI) today announced the preliminary release of fourth quarter 2009 unaudited financial results and that it will delay the release of its finalized fourth quarter and year ended 2009 financial results. The Company will also file an extension for the filing of its Form 10-K for 2009.
>
> The Company anticipates total revenue for the 2009 fourth quarter to be approximately $175-$180 million, compared to its original fourth quarter 2009 forecast of $182.0-$191.0 million. Consolidated gross margin is expected to be in the 9%-10% range and diluted earnings per share is expected to be in the range of $0.24 to $0.28 per share compared to original diluted per share estimates of $0.55-$0.60.
>
> \*       \*       \*
>
> Also today, the Company announced that it has filed a Form 12b-25 with the Securities and Exchange Commission to delay the filing of its Annual Report on Form 10-K for the year ended December 31, 2009. The Company has been conducting an assessment of its internal controls as of December 31, 2009 in accordance with the Company's Sarbanes-Oxley Act compliance procedures. Although the Company's assessment procedures are not yet complete, the Company believes that at least one of the identified deficiencies related to its

2009 Sarbanes-Oxley Section 404 compliance audit, thus far, constitutes a material weakness, including but not limited to the Company's period-end closing process as of December 31, 2009. The complete and final results of the Company's assessment of its internal controls will be disclosed in its Annual Report on Form 10-K for the year ended December 31, 2009.

As a result of the findings of the 2009 Sarbanes-Oxley Section 404 audit, thus far, the Company identified certain accounting errors that are expected to have a material impact on the previously issued quarterly financial statements for the first three quarters of 2009. Management and the accounting personnel require additional time to evaluate such effects on the previously filed quarterly financial statements of 2009. Because the review is still underway, the Company is unable to accurately estimate at this time the impacts on the Company's interim financial statements for the first three quarters of 2009. However, it is expected that as a result of the accounting errors, the cost of sales for each of the periods were understated and gross profit and net income, as a result, were accordingly overstated. Based on the Company's latest estimate, the earnings per share included in the previously issued financial statements for the nine months ended September 30, 2009 were overstated by approximately $0.15-$0.19 per share based on approximately 23.0 million weighted average number of shares for the nine months ended September 30, 2009. The foregoing estimate is based only upon preliminary information available to the Company as of the date of this press release, is subject to adjustment in connection with its ongoing review, and has not been audited by its independent registered public accounting firm. Due to the Company's ongoing internal analysis, the Company is currently unable to provide estimated results of operations for the year ended December 31, 2009. The Company will file its Annual Report on Form 10-K as soon as possible; however, there can be no assurance that the report will be filed within the extended 15 day deadline.

47.     On this news, shares of the Company's stock fell $7.10 per share, or over **37%**, to close on March 17, 2010 at $11.90 per share.

48.     The price of the Company's stock still has not recovered and currently trades at around $11.50 per share.  This represents a decline of nearly **40%** since March 16, 2010, and nearly **47%** since the Offering.

## DERIVATIVE AND DEMAND ALLEGATIONS

49.     Plaintiff brings this action derivatively in the right and for the benefit of Fuqi to redress the breaches of fiduciary duty and other violations of law by Defendants.

50.     Plaintiff will adequately and fairly represent the interests of Fuqi and its shareholders in enforcing and prosecuting its rights.

51.     The Board currently consists of the following seven (7) individuals: defendants Chong, Wong, Zhuang, Chen, Brody, Hollander, and Liu. Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful and useless act, for the following reasons:

a.  At all relevant times, the Board was (and is) required to comply with the Company's Code of Conduct. Pursuant to the Code of Conduct, defendants Chong, Wong, Zhuang, Chen, Brody, Hollander, and Liu were each required, *inter alia*, to ensure that Fuqi's financial disclosures were full, fair, and accurate, to devise and maintain an adequate system of internal controls, and to ensure compliance with all laws, rules, and regulations applicable to the Company, including laws, rules, and regulations covering false or misleading financial information. Defendants Chong, Wong, Zhuang, Chen, Brody, Hollander, and Liu breached their fiduciary duties of due care, loyalty, and good faith, because they allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures, failed to ensure that an adequate system of internal controls were in place, and failed to ensure compliance with applicable laws, rules, and regulations covering false or misleading financial information, as evidenced by the need for a restatement of Fuqi's historical financial results. Accordingly, demand was not required upon the entire Board because each member faces a substantial likelihood of liability for their breaches of fiduciary duties;

b.  At all relevant times, defendants Brody, Hollander, and Liu served as members of the Audit Committee. Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee are responsible for, *inter alia*, reviewing the Company's quarterly and annual financial statements prior to filing and reviewing the Company's disclosure controls and procedures. Defendants Brody, Hollander, and Liu breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, *inter alia*, allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and failed to ensure that adequate internal controls were in place, as evidenced by the need for a restatement of Fuqi's historical financial results. Therefore, defendants Brody, Hollander, and Liu each face a substantial likelihood of liability for their breaches of fiduciary duties and any demand upon them is futile;

c.  The principal professional occupation of defendant Chong is his employment with Fuqi as its CEO and President, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits. Thus, defendant Chong lacks independence from demonstrably interested directors, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action;

d.  The principal professional occupation of defendant Zhuang is his employment with Fuqi as its COO, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits.  Thus, defendant Zhuang lacks independence from demonstrably interested directors, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action; and

e.  The principal professional occupation of defendant Wong is his employment with Fuqi as its CFO, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits.  Thus, defendant Wong lacks independence from demonstrably interested directors, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action.

## COUNT I
## AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY FOR DISSEMINATING FALSE AND MISLEADING INFORMATION

52.  Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

53.  As alleged in detail herein, each of the Defendants (and particularly the Audit Committee Defendants) had a duty to ensure that Fuqi disseminated accurate, truthful and complete information to its shareholders.

54.  Defendants violated their fiduciary duties of care, loyalty, and good faith by causing or allowing the Company to disseminate to Fuqi shareholders materially misleading and inaccurate information through, *inter alia*, SEC filings and other public statements and disclosures as detailed herein.  These actions could not have been a good faith exercise of prudent business judgment.

55.  As a direct and proximate result of Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages, as alleged herein.

## COUNT II
## AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES FOR FAILING TO MAINTAIN INTERNAL CONTROLS

56.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

57.     As alleged herein, each of the Defendants had a fiduciary duty to, among other things, exercise good faith to ensure that the Company's financial statements were prepared in accordance with GAAP, and, when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

58.     Defendants willfully ignored the obvious and pervasive problems with Fuqi's internal controls practices and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

59.     As a direct and proximate result of the Defendants' foregoing breaches of fiduciary duties, the Company has sustained damages.

**COUNT III**
**AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES FOR**
**FAILING TO PROPERLY OVERSEE AND MANAGE THE COMPANY**

60.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

61.     Defendants owed and owe Fuqi fiduciary obligations.  By reason of their fiduciary relationships, Defendants specifically owed and owe Fuqi the highest obligation of good faith, fair dealing, loyalty and due care.

62.     Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

63.     As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, Fuqi has sustained significant damages, not only monetarily, but also to its corporate

image and goodwill.

64.     As a result of the misconduct alleged herein, Defendants are liable to the Company.

65.     Plaintiff, on behalf of Fuqi, has no adequate remedy at law.

**COUNT IV**
**AGAINST ALL DEFENDANTS FOR UNJUST ENRICHMENT**

66.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

67.     By their wrongful acts and omissions, the Defendants were unjustly enriched at the expense of and to the detriment of Fuqi.

68.     Plaintiff, as a shareholder and representative of Fuqi, seeks restitution from these Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

**COUNT V**
**AGAINST ALL DEFENDANTS FOR ABUSE OF CONTROL**

69.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

70.     Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Fuqi, for which they are legally responsible.  In particular, Defendants abused their positions of authority by causing or allowing Fuqi to misrepresent material facts regarding its financial position and business prospects.

71.     As a direct and proximate result of Defendants' abuse of control, Fuqi has sustained significant damages.

72.     As a result of the misconduct alleged herein, Defendants are liable to the

Company.

73.     Plaintiff, on behalf of Fuqi, has no adequate remedy at law.

## COUNT VI
## AGAINST ALL DEFENDANTS FOR GROSS MISMANAGEMENT

74.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

75.     Defendants had a duty to Fuqi and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Fuqi.

76.     Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Fuqi in a manner consistent with the duties imposed upon them by law.   By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of Fuqi's affairs and in the use and preservation of Fuqi's assets.

77.     During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Fuqi to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Fuqi, thus breaching their duties to the Company.   As a result, Defendants grossly mismanaged Fuqi.

## COUNT VII
## AGAINST ALL DEFENDANTS FOR WASTE OF CORPORATE ASSETS

78.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

79.     As a result of the misconduct described above, and by failing to properly consider

the interests of the Company and its public shareholders, Defendants have caused Fuqi to incur (and Fuqi may continue to incur) significant legal liability and/or legal costs to defend itself as a result of Defendants' unlawful actions.

80.     As a result of this waste of corporate assets, Defendants are liable to the Company.

81.     Plaintiff, on behalf of Fuqi, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

B.     Directing Fuqi to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board

C.     Awarding to Fuqi restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Defendants;

D.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 20, 2010

**HARWOOD FEFFER LLP**

ROBERT I. HARWOOD
SAMUEL K. ROSEN
488 Madison Avenue
New York, NY 10022
Telephone (212) 935-7400
Facsimile: (212) 753-3630

**THE WEISER LAW FIRM, P.C.**
ROBERT B. WEISER
BRETT D. STECKER
JEFFREY J. CIARLANTO
121 N. Wayne Avenue, Suite 100
Wayne, PA 19087
Telephone: (610) 225-2677
Facsimile: (610) 225-2678

Counsel for Plaintiff

## VERIFICATION

I, Richard Starkey, under penalty of perjury, as follows:

I am the Plaintiff in the above-captioned action. I have read the foregoing Complaint and authorized its filing. Based upon the investigation of my counsel, the allegations in the Complaint are true to the best of my knowledge, information and belief.


DATED: ____4/19/2010____                    _____
                                            Richard Starkey